IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CEDRIC MCDUFFIE,
    Plaintiff

Civil Action No. 4:25-cv-05119

v.

TEXAS MEDICAL CENTER,
a corporation

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff Cedric McDuffie to file this Original Complaint against Defendant Texas Medical Center and Texas Medical Center Police Department, for unlawful retaliation under Title VII and the Texas Commission on Human Rights Act and respectfully shows the following.

### I.  PARTIES

1. Plaintiff Cedric McDuffie is a resident of Cleveland, Liberty County, Texas, and was at all times relevant, an employee of Defendant. Plaintiff may be served with process through his undersigned attorney of record.

2. Defendant Texas Medical Center is a corporation, and can be served by serving its registered agent, Capitol Corporate Services, Inc., at 1501 S. Mopac Expressway, Suite 220, Austin, TX 78746.

1

## II.  JURISDICTION

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that federal questions are raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and supplemental jurisdiction over Plaintiff's Texas Commission on Human Rights Act claims under 28 U.S.C. §1367.

## III.  VENUE

5. Venue properly lies in the Houston Division of the United States District Court for the Southern District of Texas, as all of Plaintiff's claims have arisen within Houston, Texas and Defendant's principal place of business is located in Houston, Texas.

## IV.  JURY DEMAND

6. Plaintiff requests a jury trial.

## V.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), and was issued his Notice of Right to Sue Letter on July 29, 2025 (Ex. A).

## VI.  FACTS

7. Plaintiff Officer Cedric McDuffie ("McDuffie") has been in law enforcement for approximately thirty-two (32) years.

8. On or about September 5, 2023, McDuffie was hired by Defendant as a Patrol Officer within the Texas Medical Center Police Department.

9. During the course of his employment with Defendant, McDuffie was an exceptional employee, evidenced by his promotions and awards within a relatively short period of time of employment.

10. McDuffie was promoted to Lead Officer in Charge both at TCH-Main Campus and Ben Taub Hospital.

12. On or about April 14, 2024, McDuffie was voted "Agent of the Quarter" by his peers and given a letter of Commendation.

13. On or about April 26, 2024, McDuffie went to Police Headquarters to resolve a few IT issues he was experiencing.

14. While in the training room at Headquarters, Defendant's Police Chief, Chief Wolter, entered and asked two other officers who were also present in the room - Sergeant Brandon Ngyuen and a Hispanic female administrative assistant - to step out.

15. Chief Wolter then sat down next to McDuffie, and began asking about the department - specifically asking how things were going and whether there were any concerns among the workforce.

16. McDuffie responded, asking Chief Wolter if he "really wanted to know."

17. Chief Wolter replied, "Probably not, but tell me anyway," stating that McDuffie could "speak freely" regarding any concerns.

18. Thus, McDuffie took the opportunity - as a leader of his team - to voice concerns regarding the treatment of Black officers within Defendant's employment.

18. McDuffie told Chief Wolter that there was a concern among line officers that nearly all of the Sergeants had less than one year in their supervisory roles and had limited or no recent field experience.

3

19. McDuffie cited that White officers with less experience were promoted to Lieutenant before a Black officer who had more experience.

20. For example, Officer Baxter had eleven (11) years of experience, yet was passed over many times for the position of Sergeant. Only after McDuffie filed an EEOC complaint after his termination was Officer Baxter finally promoted.

20. McDuffie expressed to Chief Wolter that because approximately 99% of the officers were African American and all of the Lieutenants were White, there was a concern that race, and not experience or qualifications, is what placed officers in the roles of Lieutenant and/or Sergeant.

21. McDuffie relayed to Chief Wolter that this scenario was negatively affecting morale among the line officers and the overall workplace climate of the police force.

22. McDuffie then proceeded to provide a recent example to Chief Wolter.

23. During a "mandatory departmental meeting" held in the TMC3 parking garage, Chief Wolter addressed the predominantly African American officers while surrounded by all his white Lieutenants. Specifically, Chief Wolter lined up the white officers facing the African American officers.

24. McDuffie explained to Chief Wolter that one of the Chief's comments was a racially charged comment: that if the Chief caught any one "running"—which the Black line officers interpreted as "fleeing the plantation"—during a breach, the Chief would ensure the person(s) were caught and prosecuted to the fullest extent of the law, and if the officer died in the process, the Chief would "make sure we had a beautiful funeral."

25. At least six other officers had expressed to McDuffie how Chief Wolter's comments were perceived as racially-charged threats to the Black line officers.

4

26. McDuffie reiterated to Chief Wolter that the statement was deeply offensive to the Black line officers, contributed to a racially hostile work environment, and facilitated a feeling of fear and intimidation.

27. McDuffie further explained that the Lieutenants run the department "on fear and intimidation," systematically punishing officers with threats of changing shifts, relocation to less desirable work assignments, and/or termination.

28. McDuffie and Chief Wolter's meeting lasted about thirty (30) minutes.

30. After McDuffie and Chief Wolter's meeting, McDuffie began experiencing a different, more hostile work environment.

31. On June 13, 2024, McDuffie was suddenly issued a stay-at-home order with no explanation.

32. McDuffie was terminated on June 21, 2024.

33. After his termination, Defendant opened up two alleged sexual harassment investigations into McDuffie. The timing of the investigations post-termination prohibited McDuffie from defending himself, further causing harm to McDuffie because now these alleged claims were part of his permanent law enforcement record visible to future employers.

34. A female officer confided to McDuffie that she had been approached and encouraged to file a sexual harassment complaint against McDuffie. When this particular officer refused, she was reassigned to a less favorable shift.

35. After McDuffie's EEOC complaint in this matter, an otherwise-qualified eleven-year (11) veteran Black officer was finally promoted to Lieutenant. That individual expressed thanks to

5

McDuffie, expressing that he felt had it not been for McDuffie's EEOC charge, he would not have finally been promoted.

36. Upon information and belief, after a record of exemplary service for Defendant, McDuffie's report of discrimination to Chief Wolter and his subsequent advocacy ruffled feathers at the Department.

37. McDuffie's report of discrimination to Chief Wolter resulted in a concerted attempt to manufacture fake allegations as pretext to support his termination, when in reality, it was McDuffie's advocacy and report of perceived discrimination within the Department that caused Defendant to unlawfully terminate his employment.

## VII.  CAUSE OF ACTION
### Retaliation - Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. § 2000e)

38. Plaintiff incorporates the foregoing facts into this Cause of Action.

49. At all times relevant hereto, Plaintiff was an employee within the meaning of Title VII.

40. At all relevant times, Defendant was an employer within the meaning of Title VII, was engaged in an industry affecting commerce, and had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

41. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2(a)(1), it is an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42. Title VII of the Civil Rights Act of 1964 forbids an employer from retaliating against an employee because of the employee's opposition to any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. §2000e-3(a).

43. Defendant terminated McDuffie because he exercised his rights under Title VII to complain about perceived and experienced racial discrimination within Defendant's police force.

44. When McDuffie alerted Chief Wolter regarding the hiring and promotion of White officers to Lieutenant over more experienced Black officers, McDuffie was engaging in a

7

protected activity under Title VII - namely, complaining of discrimination within the Department due to race.

45.   McDuffie's complaint centered around Defendant limiting the opportunities for Black officers to be promoted, and denying Black officers the compensation, conditions and privileges of employment that come with being considered and receipt of promotions that they were otherwise qualified for.

46.   Despite being recently promoted, within less than two months later, McDuffie learned an investigation had been opened into him shortly after his conversation with Chief Wolter, and issued a stay-at-home order with no explanation, culminating in McDuffie's eventual termination.

47.   The Defendant knew the retaliatory nature of its conduct and its actions constituted a prohibited retaliatory practice done with reckless indifference to Plaintiff's right to be from punishment for having complained of racially discriminatory employment practices.

48.   Defendant's actions constitute illegal retaliation under Title VII.

49.   McDuffie suffered significant damages as a result of the Defendant's unlawful retaliatory actions, including emotional distress, future lost wages and benefits in increased salary opportunities, and a permanent, negative mark on his service record that follows him to potential future law enforcement jobs.

## VIII.   CAUSE OF ACTION
**Violation of the Texas Labor Code**
**Section 21.055 – Retaliation on the Basis of Race**

50.   McDuffie hereby realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

51.   Pursuant to Section 21.055, "an employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union or employment agency retaliates or discriminates against a person who…opposes a discriminatory practice."

52.   McDuffie at all relevant times was an employee as defined in the Texas Labor Code.

53.   The Defendant was at all relevant times a covered employer under the Texas Labor Code.

54.   McDuffie at all times was a member of a protected racial class.

55.   Defendant intentionally retailed against McDuffie when he opposed a discriminatory practice within Defendant's police department - namely, opposing the hiring and promotion of White officers to Lieutenant over more experienced Black officers, complaining of discrimination within the Department due to race, Defendant limiting the opportunities for Black officers to be promoted, and denying Black officers the compensation, conditions and privileges of employment that come with being considered and receipt of promotions that they were otherwise qualified for.

56.   McDuffie suffered significant damages as a result of the Defendant's unlawful retaliatory actions, including emotional distress, future lost wages and benefits in increased salary opportunities, and a permanent, negative mark on his service record that follows him to potential future law enforcement jobs.

## IX.   CONCLUSION AND PRAYER

WHEREFORE, PREMISED CONSIDERED, Plaintiff McDuffie respectfully prays that:

57.   Plaintiff recover back-pay, compensatory and punitive damages in an amount determined by the jury; and

58.   Plaintiff recover attorney's fees, costs of court, and the reasonable costs and expenses of this action against Defendants, along with pre and post judgment interest and any and all other relief to which he may show himself entitled.

Respectfully submitted,

*Emily Cook*
**Chandler, Cook & Fitzgerald PLLC**
Bar No. 24092613
1203 Trinity St.
Liberty, TX 77575
ekc@ccflegal.com
936-336-4025

## VERIFICATION OF PLAINTIFF CEDRIC MCDUFFIE

I, Cedric McDuffie, am a Plaintiff in the above-captioned matter. I have read the THIRD AMENDED VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.]. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of Texas, that the foregoing is true and correct.

/s/ _Cedric_
Cedric McDuffie
October 27, 2025

KERRY LYNN FISHER
My Notary ID # 124719929
Expires October 20, 2027

10-27-2025